# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**
      **Plaintiff,**

  v.                                                              **Case No. 09-CR-20**

**COREY SMITH**
      **Defendant.**

## DECISION AND ORDER

A jury convicted defendant Corey Smith of conspiracy to possess with intent to distribute and distribute cocaine (count one) and distribution of cocaine (count two). The jury further determined that the conspiracy charged in count one involved 5 kilograms or more of cocaine. Pursuant to Fed. R. Crim. P. 29(c), defendant now moves for entry of a judgment of acquittal on both counts. Because the evidence of guilt was sufficient – indeed, overwhelming – I deny the motion.

## I. RULE 29 STANDARD

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In considering a challenge to the sufficiency of the evidence, the court views the evidence in the light most favorable to the government, defers to the credibility determinations of the jury, and overturns a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. United States v. Huddleston, 593 F.3d 596, 601 (7th Cir. 2010). Under this standard, a defendant challenging the sufficiency of the evidence supporting his convictions faces a

"daunting task." United States v. Blanchard, 542 F.3d 1133, 1154 (7th Cir. 2008).

## II.  DISCUSSION

A.   **Count One**

In order to obtain a conviction on count one, the government had to demonstrate the existence of an agreement between two or more persons to possess with intent to distribute and distribute cocaine; that defendant knew of the agreement; and that he intentionally joined the agreement.  See, e.g., United States v. Spagnola, 632 F.3d 981, 986 (7th Cir. 2011) (citing United States v. Taylor, 600 F.3d 863, 868 (7th Cir. 2010)); United States v. Johnson, 592 F.3d 749, 754 (7th Cir. 2010).  The government met its burden here.

The evidence showed that defendant conspired with his brother, Lewis Judkins, and others, including Judkins's girlfriend, Misty Dolgner, to possess with intent to distribute and distribute cocaine.  The government presented testimony from Dolgner that she, Judkins, and defendant worked together to sell cocaine in the Sheboygan, Wisconsin area.  Judkins, the leader of the conspiracy, directed Dolgner and defendant to pick up cocaine from Chicago sources, store the cocaine, and redistribute it to others.  The government presented a slew of recorded telephone phone calls between Judkins, Dolgner, defendant, and their customers and suppliers, which corroborated Dolgner's testimony.  During these calls, Judkins directed Smith to pick up cocaine in Chicago, collect money from drug customers, and distribute cocaine to customers.  Defendant and Judkins also discussed their customers and a possible "snitch" posing a threat to their business.  During other calls, Judkins referred cocaine customers to defendant when he was busy.  Finally, the government established that defendant delivered

cocaine to an informant who set up a controlled buy with Judkins,[1] and the buy money from that transaction was later seized from a safe deposit box controlled by Judkins and defendant.[2]

In his motion, defendant attacks Dolgner's credibility, noting that she hoped to receive consideration for her testimony at her sentencing. However, witness credibility is a matter for the jury, not the court. Defendant cross-examined Dolgner about her motives, yet the jury found her credible nonetheless. Further, as noted above, the recorded calls provided strong corroboration for Dolgner's testimony. Defendant contends that Dolgner may have misinterpreted some of the calls, which could have been about marijuana rather than cocaine. Again, however, it is the jury's job to draw inferences from the evidence. See, e.g., United States v. Henderson, 58 F.3d 1145, 1149 (7th Cir. 1995) (holding that the jury was entitled to believe the testimony of cooperating accomplices and to draw its own inferences from recorded phone calls).

Defendant argues that the evidence showed only that he spent time with Judkins, his brother, and Dolgner, with whom he smoked marijuana. However, the jury was properly instructed that a defendant's mere presence and association with conspirators is not by itself sufficient to prove his membership in the conspiracy. (Jury Instructions at 23.) The jury found that defendant joined the conspiracy, a verdict supported by the evidence set forth above.

Defendant notes that most of the evidence of his participation in the conspiracy related to the period just prior to his, Judkins, and Dolgner's arrests in December 2008, and that the

---

[1]This delivery formed the basis for count two.

[2]This is but a brief summary of the government's evidence, which also included testimony from various law enforcement officers involved in surveillance, GPS tracking, and other aspects of the investigation.

application to wiretap Judkins's phone did not even mention Corey Smith. However, it is well-settled that a conspiracy defendant need not join at the beginning or know all the other members or the means by which the conspiracy's purpose was to be accomplished. See, e.g., United States v. Katalinich, 113 F.3d 1475, 1483 (7th Cir. 1997). That Judkins was the primary target of the government's investigation does not upset the verdict here. Moreover, in making this argument defendant ignores the testimony of Ray Evans that he obtained cocaine from Judkins and defendant for resale back in March of 2007, resulting in his arrest and imprisonment. During one of the recorded calls, the recently released Evans told defendant that he "took the heat" when they "all caught this case together." (Govt. Ex. 146)

Finally, defendant argues that even if a reasonable jury could have found that he joined the conspiracy, the jury's finding that he is responsible for more than five kilograms of cocaine is not supported by the evidence. I first note that the jury was asked to find the amount of cocaine involved in the conspiracy, not the amount for which defendant is responsible. See United States v. Seymour, 519 F.3d 700, 710 (7th Cir. 2008) (noting that the jury determines drug quantity and type for the conspiracy as a whole, and the judge may then determine the quantity attributable to each individual defendant at sentencing). The evidence supported the jury's finding that the conspiracy in this case involved more than 5 kilograms of cocaine. The government established that Judkins directed various couriers, including Dolgner, defendant, and Sarah Hawver, to travel to Chicago to pick up cocaine. Dolgner testified that she and/or Hawver made (at least) weekly trips, obtaining 4 ½, 9, and 18 ounce quantities. Using the most conservative of these figures, and assuming weekly trips, the jury could have found that between May 2006 and December 2008 – the period charged in the indictment – the conspiracy obtained over 15 kilograms of cocaine. According to the government's GPS

4

evidence, vehicles associated with the conspiracy made 56 trips to Illinois between April 18, 2008 and December 8, 2008. Thus, during this period, the evidence shows that Judkins's couriers were making about seven trips per month, which would permit finding an even higher drug weight.

**B.    Count Two**

In order to obtain a conviction on count two, the government had to establish that defendant distributed cocaine; that he did so knowingly or intentionally; and that he knew the substance was a controlled substance. See, e.g., United States v. Graham, 315 F.3d 777, 781 (7th Cir 2003). The government also met its burden on this count.

The government's informant, Kelly Villiard, arranged to buy cocaine from Judkins. Villiard testified – and the recorded calls confirmed – that Judkins directed Villiard to a certain location to complete the transaction. (Govt. Ex. 107, 108.) Defendant, who arrived to deliver the drugs, then called Villiard and provided more specific directions. (Govt. Ex. 109.) Villiard met defendant, who provided 2 ounces of cocaine in exchange for $2500. Following the completion of the transaction, defendant and Judkins spoke, with defendant confirming that he "gave that to her." (Govt. Ex. 110.) Shortly thereafter, an angry Judkins called Villiard, accused her of paying only $2100, and demanded the other $400. Villiard asked Judkins to have "Corey" go through his pockets and count the money again. (Govt. Ex. 112.) Judkins then called back, stating that "he found it." (Govt. Ex. 113.) Villiard asked for an apology, and Judkins said that "it's not an apology on my part," it's "his apology." (Govt. Ex. 113.) Villiard turned the suspected cocaine over to law enforcement, and a DEA chemist tested the substance, confirming that it was 54.6 grams (just under 2 ounces) of cocaine. Officers later searched defendant and Judkins's safe deposit box, locating some of the buy money from this

5

transaction.

Defendant notes that the law enforcement officers supervising this controlled buy did not see the actual hand-off between defendant and Villiard. However, Villiard, who was familiar with defendant from previous encounters, testified that it was defendant who delivered the drugs. Defendant notes that Villiard had credibility problems, such that law enforcement stopped working with her after this transaction. As with Dolgner, the jury was apprised of Villiard's problems, yet elected to believe her, as it was entitled to do. In any event, as was also the case with Dolgner, the recorded calls fully corroborated Villiard's narration of this deal.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's Rule 29 motion (R. 139) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 1st day of June, 2011.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge